UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURA JACQUELINE LISTON, )<br>    Plaintiff, )<br>  -vs- )<br> )<br>MICHAEL CHERTOFF, SECRETARY OF THE )<br>U.S. DEPARTMENT OF HOMELAND )<br>SECURITY, )<br> )<br>    Defendant. )<br>──────────────────────────────── ) | NO.  CV-06-0265-LRS<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS |

   Before the Court is the United States' Motion to Dismiss (Ct. Rec. 8), noted without oral argument.  Defendant United States requests an order dismissing Plaintiff's suit for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## I. FACTUAL BACKGROUND

   Plaintiff Laura J. Liston filed a Complaint for Declaratory Judgment seeking a determination that she is entitled to a Certificate of Citizenship pursuant to the Child Citizenship Act found at §322 of the Immigration and Nationality Act, 8 U.S.C. §1433.  Plaintiff, born on August 13, 1986, is a citizen and national of Mexico.  On March 29, 2004, Plaintiff's father, Raymond Gilbert Liston, a U.S. citizen, applied for a Certificate of Citizenship on behalf of Plaintiff by submitting an N-

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 1

600 application to the United States Citizenship and Immigration Services' ("USCIS") Spokane, Washington office.  Plaintiff claimed a right to citizenship through her citizen father and grandfather. Complaint, ¶4.  At that time, Plaintiff's eighteenth birthday was four and a half months away, on August 13, 2004. Complaint, ¶6.  The N-600 application process requires that applicants personally appear and swear an oath of allegiance prior to issuance of a certificate of citizenship. 8 U.S.C. §1433(a)(3); 8 C.F.R. §322.4.  Because Plaintiff was so close to her eighteenth birthday, USCIS scheduled her required personal interview for July 29, 2004.  Complaint, §9; Attachment B, ¶3.

Thereafter, USCIS states it mailed a notice of the interview date and time to Plaintiff's home in Mexico, although a copy of such letter is not provided[1] to the Court.  While Plaintiff claims to have not received this notice, it was not returned to USCIS and was thus presumed to be delivered.  Complaint ¶¶7, 13, Attachment B, ¶5.  Plaintiff attempted to determine the status of her application via telephone calls to the USCIS National Service Center but was unsuccessful because she did not know her file number.  Complaint ¶10. Plaintiff indicates that she did not telephone the Spokane office of USCIS directly because its phone number was not provided on its website.  Complaint ¶11. Plaintiff did not attempt to obtain the telephone number through other means, did not send written communication to USCIS, nor did she physically go to USCIS

---

[1] Defendants cite to Attachment B, ¶¶4-5 of Ct. Rec. 10.  The October 18, 2004 USCIS letter attached to Ct. Rec. 10 states that written notice of the interview was sent May 26, 2004.  Insofar as known, no copy of that letter has been provided to the Court.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 2

to check on her case status prior to her birthday. *Id*. Plaintiff was unaware of and did not attend her interview appointment on July 29, 2004 at the Spokane office of USCIS, although Plaintiff claims she was in the United States at that time and could have easily attended her interview had she been given proper and adequate notice. Complaint ¶9.

After the missed interview, USCIS attempted to telephone Plaintiff at her home in Mexico to remind her of the imminent eligibility deadline but was unable to reach her. Complaint, ¶12; Attachment B, ¶5. There is no evidence before this Court, however, of alternate addresses and phone numbers which the agency may have had to contact the Plaintiff nor is there any indication that such efforts were made. It should be noted that at this time, at least under state law, the Plaintiff was deemed a minor (i.e., less than 18 years of age) and that the original application had been submitted by the Plaintiff's father. After the deadline had passed, USCIS sent a letter to Plaintiff dated September 22, 2004 (which she received), informing her that she had missed her appointment. Complaint, ¶7.

Plaintiff's application was denied on October 18, 2004 because Plaintiff had reached her eighteenth birthday prior to the adjudication of her application, did not attend or reschedule her required N-600 interview appointment, had not subscribed to the oath of allegiance as required by 8 U.S.C. 1433(b) and was determined to be statutorily ineligible. Complaint, ¶2; Attachment A, ¶8. Plaintiff is no longer eligible to reapply under this statute, as she is no longer a child. Complaint, ¶6.

///

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 3

## II.  LEGAL STANDARDS

**A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Standards Under Rule 12(b)(1)**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit.  Fed.R.Civ.P. 12(b)(1).  The party seeking to invoke federal jurisdiction bears the burden of establishing that jurisdiction exists.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986).  A complaint will be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction if (1) the cause does not "arise under" any federal law or the United States Constitution, (2) there is no cause or controversy within the meaning of that constitutional term, or (3) the cause is not one described by any jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Similarly, Rule 12(h)(3) provides, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Although the defendants are the movants, the party invoking federal jurisdiction, the plaintiffs here, have the burden of showing that jurisdiction is proper.  *Thornhill Publishing Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730 (9th Cir.1979).  The court presumes a lack of jurisdiction until the party asserting jurisdiction proves otherwise.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

///

///

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 4

**B.  Rule 12(b)(6) Motion to Dismiss for Standards**

A motion to dismiss pursuant to FRCP 12(b)(6) should be granted where the Complaint fails to state a claim upon which relief can be granted.  Dismissal is warranted where there is a "lack of a cognizable legal theory" or where there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  "To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) (internal quotations omitted).

In evaluating a 12(b)(6) motion, the Court should consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient" and not merely whether each individual allegation is sufficient. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002); *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944 (C.D. Cal. 2003).  In doing so, the Court must accept well-pleaded allegations as true, but it is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1063 (C.D. Cal. 2000).

A motion to dismiss under Rule 12(b)(6) will only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle her to relief. *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986), cert. denied, 479 U.S. 1054,

107 S.Ct. 928, 93 L. Ed. 2d 979 (1987). All allegations of material fact in the complaint are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir. 1987).

### III.    SUMMARY OF ARGUMENTS

#### A.  Defendant's Arguments

Defendant argues that the court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction because jurisdiction does not exist under either 8 U.S.C. §1503(a) or the Declaratory Judgment Act, 28 U.S.C. §2201, the two statutes for which jurisdiction was pleaded in this action. Complaint, ¶1. Defendant asserts that Plaintiff has failed to meet her burden of demonstrating that the Court possesses jurisdiction to entertain this suit.

#### 1.  No Jurisdiction Pursuant To 8 U.S.C. §1503

Defendant argues that jurisdiction does not exist under 8 U.S.C. §1503(a), which statute allows a person, lawfully admitted to reside in the United States, to bring a declaratory judgment action in federal district court. Defendant asserts that Plaintiff cannot satisfy the requirements of 1503(a) that she be within the United States. Plaintiff, Defendant concludes, resides in Mexico and has not shown that she was anything more than a non-immigrant visitor, even though she may have been physically present in the United States at times while her citizenship application was pending.

#### 2.  No Jurisdiction Exists under the Declaratory Judgment Act

Defendant, citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) and *Jarrett v. Resor*, 426 F.2d 213, 216 (9ᵗʰ Cir. 1970) argues that the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 6

Declaratory Judgment Act, 28 U.S.C. §2201 does not provide an independent basis of jurisdiction.   Because jurisdiction does not otherwise exist under 8 U.S.C. §1503, Defendant reasons that the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. Defendant concedes, however, that contrary law[2] does exist but urges such law should be viewed as arguably overruled by the more recent cases[3] cited by the Defendant.   The more recent cases adopt a stricter approach and hold that the Declaratory Judgment Act provides no independent basis for subject matter jurisdiction.

Defendant additionally argues that it is illogical to permit 28 U.S.C. §2201 to establish jurisdiction in this case because doing so would make the detailed requirements set forth in 8 U.S.C. §1503 null and void.

### 3.  Plaintiff's Alternate Theory

Defendant alternatively requests that if this Court determined it has jurisdiction, the Court should still dismiss this case under Rule 12(b)(6) because neither the USCIS nor the Court has the legal authority to ignore the statutory requirements for citizenship.

In particular, Defendant argues that the USCIS lacks the statutory authority to grant this Plaintiff citizenship based on the relevant

---

[2]*Rusk v. Cort*, 369 U.S. 367, 379 (1962)(holding that even when a person outside of the United States is not able to bring suit under §1503, the Declaratory Judgment Act does not provide an independent basis for jurisdiction); *Kum Chor Chee v. Clark*, 384 F.2d 918, 919 (9th Cir. 1967)(citing *Rusk* for finding that §1503 was intended to make judicial review of claims to citizenship more readily available, not to limit or destroy opportunities for such review which existed when this section was adopted).

[3]*Schilling* and *Jarrett*.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 7

statute (Child Citizenship Act or CCA) and regulations that require the child to be under the age of 18 years. Defendant states that although the law may be admittedly harsh on some applicants, Plaintiff's assertion that USCIS's denial of her application was arbitrary and capricious is not accurate. Defendant argues that USCIS expedited and adjudicated Plaintiff's application properly but had no choice but to deny Plaintiff's application. Plaintiff's ineligibility was cause by the delayed submission and purportedly a mail service problem. Defendant states that a missed deadline cannot be undone in these circumstances.

**B.  Plaintiff's Arguments**

Plaintiff's predominant theory in opposition to dismissal is that this case presents genuine issues of material fact that must be resolved at trial. Plaintiff's argument focuses mainly on the reasonableness of the efforts she and her father made in attempting to discover the status of her case after not receiving the notice mailed to them. Plaintiff alleges that USCIS made it unreasonably difficult for her to inquire about her case by not giving her a direct telephone number and by not giving her a file number at the time of her application, which she needed to access the Internet file tracking system to determine the status of her application. Plaintiff states she personally went to the Spokane USCIS office on October 12, 2004 to personally determine the status of her case, at which time her interview could have been conducted without prejudice to the government. Plaintiff argues for equitable estoppel to be applied in her case based on the reasonableness of her actions.

///

///

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 8

# IV.   ANALYSIS

First, this Court will exercise jurisdiction over this matter as it appears that Plaintiff has received a final administrative denial of a certificate of citizenship.  Congress has set forth the method by which one asserting derivative citizenship may have it declared.  The Immigration and Nationality Act requires that a person with such a claim initially apply to the Immigration and Naturalization Service for a Certificate of Citizenship. 8 U.S.C. § 1452(a); 8 C.F.R. § 341.1-.7 (1994).  If the applicant is denied a certificate, he or she may then initiate a declaratory judgment action in federal court under section 1503(a) requesting a judicial declaration of citizenship.

It is not disputed that Plaintiff's father sought a certificate of citizenship pursuant to 8 U.S.C. § 1452(a) which reads in pertinent part:

> A person who claims to have derived United States citizenship through the naturalization of a parent ... may apply to the Attorney General for a certificate of citizenship. Upon proof to the satisfaction of the Attorney General that the applicant is a citizen, and that the applicant's alleged citizenship was derived as claimed, or acquired, as the case may be, and upon taking and subscribing before a member of the Service within the United States to the oath of allegiance required by this chapter of an applicant for naturalization, such individual shall be furnished by the Attorney General with a certificate of citizenship, but only if such individual is at the time within the United States.

8 U.S.C.A. § 1452(a).

Although Defendant disputes whether Plaintiff was an individual "within" the United States" at the relevant time and as required by 8 U.S.C. 1503, Defendant concedes that Plaintiff was within the United States at times during the pendency of her application.  Plaintiff states

1  she was in Spokane on July 29, 2004 when her interview was scheduled,
2  albeit without her knowledge.

3      Furthermore, it is also not disputed that Plaintiff would not have
4  qualified for citizenship had the interview occurred.  Additionally, it
5  is undisputed that the application was supported by documentary and other
6  evidence essential to establish the claimed citizenship, as there is
7  evidence Plaintiff's sister was issued a citizenship certificate.
8  Declaration of Sandra Johnston, ¶8.

9      On October 18, 2004 a letter was sent to Plaintiff denying her
10 application for a certificate of citizenship and explaining that efforts
11 were made to contact her but that she had missed her interview
12 appointment and now, being 18 years, did not meet the requirements for
13 issuance of a certificate.  The October 18 letter also advised of the
14 right to file an appeal under 8 C.F.R. 103.3 within 30 days of the
15 decision.  It does not appear that Plaintiff filed such an appeal of the
16 denial of her application for a certificate of citizenship.  As the court
17 of appeals for the Third Circuit has held, "a federal district court does
18 not have jurisdiction to declare citizenship absent exhaustion of an
19 applicant's administrative remedies." *Breyer,* 41 F.3d at 892; *see also*
20 *Whitehead v. Haig*, 794 F.2d 115, 119 (3d Cir. 1986) ("[A] final
21 administrative denial of a claim or right of privilege as a United States
22 National is a prerequisite for maintaining a § 1503(a) action.").

23     Federal law requires that the alien exhaust all available
24 administrative remedies before seeking judicial review with respect to
25 a claim of citizenship, whether it is raised in a removal proceeding or
26 through the filing of an application for declaration of citizenship.  See

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 10

8 U.S.C. § 1252(b); 8 U.S.C. § 1503(a); *see also Massieu v. Reno*, 91 F.3d 416, 426 (3d Cir. 1996); *United States v. Breyer*, 41 F.3d 884, 891-92 (3d Cir. 1994); *McKenzie v. INS*, 2005 WL 452371, *4 (E. D. Pa., Feb. 23, 2005); *Ewers v. INS*, 2003 WL 2002763, *2 (D.Conn., Feb. 28, 2003); *Whitehead v. Haig*, 794 F.2d 115, 119 (3d Cir. 1986) (holding a final administrative denial of a claim or right or privilege as a United States National is a prerequisite for maintaining a § 1503(a) action). This requirement is jurisdictional. See *Duvall v. Ellwood*, 336 F.3d 228, 233 (3d Cir. 2003); *Breyer*, 41 F.3d at 891-92.

Although Plaintiff ideally should have appealed her citizenship certificate denial in an effort to obtain a "final" determination, the Court has considered and rejects the Government's argument that this Court does not have jurisdiction over the case.[4]

Under 8 U.S.C. § 1503(a),

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department ... on the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 ... for a judgment declaring him to be a national of the United States.... An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege....

The Third Circuit has explained, "The Immigration and Nationality Act requires that a person with [a claim of derivative citizenship] initially apply to the Immigration and Naturalization Service for a Certificate of Citizenship .... If the applicant is denied a certificate, he or she may

---

[4]The Government does not argue that Plaintiff's suit is precluded because of a failure to exhaust administrative remedies.

then initiate a declaratory judgment action in federal court under section 1503(a)." *United States v. Breyer*, 41 F.3d 884, 891-92 (3d Cir. 1994).

This Court similarly finds that because Plaintiff has actually applied for derivative citizenship, she has availed herself of the administrative process necessary to a claim of citizenship, and this Court possesses subject matter jurisdiction to adjudicate Plaintiff's claim of derivative citizenship.

The Court finds that facts remain undetermined whether the Plaintiff can show that: (1) the government has engaged in affirmative misconduct which arguably goes beyond negligence; and (2) the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest under *Pauly v. U.S. Dept. Of Agriculture*, 348 F.3d 1143, 1149 (9th Cir. 2003).

In the instant case, Plaintiff's father petitioned on his minor daughter's behalf. The current state of the record does not indicate whether the agency retained the father's phone number and address nor the applicable practice concerning notice to a parent or guardian when dealing with an underage minor whose citizenship is at issue. Plaintiff specifically alleges that she did not have a file number which would permit her to use the agency's toll free 800 inquiry information service and that she was effectively precluded from obtaining useful information from the National Service Center. Neither does the information before the Court indicate what efforts, if any, the Agency made to notify the Plaintiff, who, as noted, was a minor at the time, by use of her father's address and/or phone number. Information supplied to the Court in the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 12

filings herein also suggest that Plaintiff was never given the direct number for the Spokane office. Although the papers filed by the United States infer that Plaintiff was made aware of the strict time limitations for completion of the admittedly pro forma interview, this fact is not clearly set forth in materials which have been filed thus far in this litigation.

All that can be gleaned from the information provided incident to the pending motion is that Plaintiff received a simple acknowledgment that her application was filed and was advised in writing of an 800 number which could be called. She had no file number which could be used to obtain relevant information on the National Service Center's 800 phone number. There is apparently little or no other evidence in the record of "useful" information from which the Plaintiff, or an adult acting on her behalf, could have used to learn what was occurring.

In *Harriott v. Ashcroft*, 277 F. Supp. 2d 538 (E. D. Pa. 2003) the plaintiff's petition for citizenship under the statute at issue in this case was inexplicably delayed for an extended period of time. With respect to expedited situations, the Harriot court noted:

> It is undisputed that the INS's internal guidelines expressly provide for eligibility determination in all cases in less than sixty days and the expedition of applications for children approaching their eighteenth birthday. FN8 Further, Respondents fail to dispute that their duty to approve applications for derivative citizenship under 8 U.S.C. § 1433(a) is ministerial rather than discretionary. See 8 U.S.C. § 1433(a) ("The Attorney General **shall** issue such a certificate of citizenship upon proof to the satisfaction of the Attorney General that the following conditions have been fulfilled ...") (emphasis added).

*Harriot*, 277 F. Supp. 2d at 543.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 13

Further, footnote 8 of the *Harriot* opinion describes the relevant INS guidelines that provide for a preliminary adjudication of such expedited application:

> The relevant INS internal guidelines provide that "upon receipt of the N-643 [application form], the field office should preliminarily adjudicate the application to determine eligibility in less than 60 days." The guidelines further state: "immediate priority shall be accorded applications for children approaching their eighteenth birthday".

*Id*, at 542 n.8.

Assuming the aforementioned internal policy is still in effect, the Court cannot determine with accuracy the date Plaintiff's application was preliminarily adjudicated[5]

While the criteria for the application of the doctrine of equitable estoppel requires a finding that the government has engaged in "affirmative misconduct" going beyond negligence and such conduct will cause "serious injustice," the Court cannot at this time, as a matter of law, preclude the possibility that Plaintiff could carry the burden on this issue and show grounds for relief following a hearing at which all facts were fully heard and determined. The government's allegation that serious injustice will not occur by denial of Plaintiff's claim is brought into question given the years of additional delay as well as

---

[5]The October 18, 2004 letter to Plaintiff suggests the first written notice to her was sent by the Agency on or about May 26, 2004, almost 60 days following the initial application. The letter that Plaintiff did receive was sent out September 22, 2004, almost 4 months later. Plaintiff's interview, had it occurred when scheduled, would have been approximately 4 months after her application was filed.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 14

1   application of differing standards which will be applied to Plaintiff

2   before she can again approach the threshold of American citizenship.

3        Despite the fact that Plaintiff's citizenship interview is purely

4   ministerial, *see Harriot, supra*; would take only 10-15 minutes; and

5   involves virtually no application of discretionary powers, the impact of

6   the government's denial of Plaintiff's application at this time has

7   severe consequences.  Accordingly,

8        **IT IS ORDERED** that Defendant United States' Motion to Dismiss,

9   **Ct. Rec. 8**, filed January 11, 2007, is denied without prejudice based on

10  the current state of the record.

11       **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this

12  Order, provide copies to counsel and set a telephone scheduling

13  conference to establish an early hearing date on Plaintiff's complaint.

14       **DATED** this 21st day of September, 2007.

15

16                                    *s/Lonny R. Suko*

17                                 _____
                                        LONNY R. SUKO
                                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 15